**ORAL ARGUMENT NOT YET SCHEDULED**
**Case No. 17-7059**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

AMERICAN FREEDOM DEFENSE INITIATIVE; PAMELA
GELLER; and ROBERT SPENCER,

*Plaintiffs and Appellants,*

v.

WASHINGTON METROPOLITAN AREA TRANSIT
AUTHORITY ("WMATA") and PAUL J. WIEDEFELD, in his
official capacity as General Manager for WMATA,

*Defendants and Appellees.*

---

Appeal from The United States District Court
for the District of Columbia
The Honorable Gladys Kessler, Presiding

---

**APPELLEE'S BRIEF**

---

Patricia Y. Lee
Gerard J. Stief
WMATA
600 Fifth Street, N.W.
Washington, D.C. 20001
Telephone:   202-962-1463
Facsimile:   202-962-2550

Donald B. Verrilli, Jr.
Chad I. Golder
Jonathan S. Meltzer
MUNGER, TOLLES & OLSON LLP
1155 F Street N.W., Seventh Floor
Washington, D.C. 20004-1357
Telephone:   (202) 220-1100
Facsimile:   (202) 220-2300

Rex S. Heinke
AKIN GUMP STRAUSS HAUER
& FELD LLP
1999 Avenue of the Stars, Suite 600
Los Angeles, California 90067
Telephone:   (310) 229-1000
Facsimile:   (310) 229-1001

Attorneys for WMATA

**CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES**

### A.    Parties and amici

All parties intervenors, and amici appearing before the district court and in this Court are listed in the Brief for American Freedom Defense Initiative (AFDI).

### B.    Rulings under review

References to the rulings at issue appear in the Brief for AFDI.

### C.    Related cases

This case has never been before this Court or any other court, beyond the district court from which this case has been appealed.  There is no case involving both substantially the same parties and the same or similar issues pending in this or any other court.

# TABLE OF CONTENTS

**Page**

GLOSSARY OF ABBREVIATIONS ........................................................1

STATEMENT OF ISSUES .....................................................................2

INTRODUCTION ...................................................................................3

STATEMENT OF PERTINENT AUTHORITIES ...................................6

STATEMENT OF THE CASE.................................................................7

    A.    Statement of facts ..................................................................7

    B.    Procedural history................................................................13

SUMMARY OF THE ARGUMENT ......................................................17

ARGUMENT .........................................................................................21

I.    Standard Of Review...................................................................21

II.    The District Court Properly Denied AFDI's First Amendment And Equal Protection Claims ...........................................................21

    A.    WMATA properly rejected AFDI's advertisement pursuant to the policy in force at the time of its decision .....................21

        1.    WMATA's May 28, 2015 policy converted its advertising space into a nonpublic forum .................................22

        2.    WMATA's May 28, 2015 policy permissibly restricts speech in a nonpublic forum because it is viewpoint neutral and reasonable...........................................................28

            (a)    WMATA's policy is viewpoint neutral..........................28

            (b)    WMATA's policy is reasonable....................................33

            (c)    WMATA's policy is not unconstitutionally vague ........38

    B.    WMATA's decision to change its advertising pace to a nonpublic forum was permissible and does not alter the First Amendment analysis ........................................................40

        1.    WMATA did not change its forum from designated public to nonpublic because of AFDI's advertisement............41

# TABLE OF CONTENTS
## (continued)

Page

      2.    AFDI cannot show that WMATA changed its policy as a pretext for discriminating against AFDI on the basis of viewpoint ................................................................................45

    C.    AFDI lacks a justiciable claim for injunctive or declaratory relief arising out of WMATA's pre-May 28, 2015 policy .................48

III.    WMATA Is Not Liable Under 42 U.S.C. § 1983, And Its Officers Are Not Liable For Damages Under That Statute ................................................51

CONCLUSION ................................................................................56

CERTIFICATE OF COMPLIANCE ................................................................57

CERTIFICATE OF SERVICE ................................................................58

ii

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Abdulwali v. WMATA*,
   315 F.3d 302 (D.C. Cir. 2003).........................................................54

*AFDI v. Massachusetts Bay Transp. Auth.*,
   781 F. 3d 571 (1st Cir. 2015)..........................................................11

*\*AFDI v. Metro. Transp. Auth.*,
   815 F. 3d 105 (2nd Cir. 2016) ....................................... 11, 18, 25, 40, 43, 49, 51

*\*AFDI v. Suburban Mobility Auth. For Reg'l Transp.*,
   698 F. 3d 885 (6th Cir. 2012) .............................................. 16, 25, 29, 31, 39, 40

*AFDI v. WMATA*,
   898 F. Supp. 2d 73 (D.D.C. 2012)............................................11, 27

*Akiachak Native Cmty. v. United States Dep't of Interior*,
   827 F.3d 100 (D.C. Cir. 2016)........................................................50

*Arkansas Educ. Television Comm'n v. Forbes*,
   523 U.S. 666 (1998).................................................................26, 27

*Berkovitz by Berkovitz v. United States*,
   486 U.S. 531 (1988)....................................................................54

*Cambridge Christian School, Inc. v. Florida High School Athletic
   Association, Inc.*,
   Case No: 8:16–cv–2753–T–36AAS, 2017 WL 2458314 (M.D.
   Fla., June 7, 2017).....................................................................31

*Children of the Rosary v. City of Phoenix*,
   154 F.3d 972 (9th Cir. 1998) .........................................................31

*Christ's Bride Ministries, Inc. v. Se. Pennsylvania Transp. Auth.*,
   148 F.3d 242 (3d Cir. 1998) ......................................................37, 38

*Authorities upon which we chiefly rely are marked with
asterisks.*

iii

## TABLE OF AUTHORITIES
### (continued)

Page

*Christian Legal Soc. Chapter of the Univ. of California, Hastings*
*Coll. of the Law v. Martinez,*
   561 U.S. 661 (2010)...........................................................22

*Coleman v. Ann Arbor Transp. Auth.,*
   947 F. Supp. 2d 777 (E.D. Mich. 2013) ..........................................45

*Coleman v. District of Columbia,*
   794 F.3d 49 (D.C. Cir. 2015)....................................................21

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,*
   473 U.S. 788 (1985)............... 5, 17, 18, 21, 22, 23, 24, 28, 29, 33, 41, 44, 45, 48

*Cutchin v. District of Columbia,*
   174 F. Supp. 3d 427 (D.D.C. 2016).................................................53

*Dant v. District of Columbia,*
   829 F.2d 69 (D.C. Cir. 1987)......................................................54

*Disability Rights Council of Greater Wash. v. WMATA,*
   239 F.R.D. 9 (D.D.C. 2006)........................................................53

*EEOC v. Aramark Corp.,*
   208 F.3d 266 (D.C. Cir. 2000).....................................................21

*Hazelwood v. Kuhlmeier,*
   484 U.S. 260 (1988)...............................................................27

*Headen v. WMATA,*
   741 F. Supp. 2d 289 (D.D.C. 2010).................................................53

*Initiative & Referendum Inst. v. U.S. Postal Serv.,*
   685 F.3d 1066 (D.C. Cir. 2012)............. 17, 18, 23, 24, 26, 33, 42, 43, 49, 50, 51

*James v. WMATA,*
   649 F. Supp. 2d 424 (D. Md. 2009).................................................52

*Jones v. Bernanke,*
   557 F.3d 670 (D.C. Cir. 2009).....................................................21

iv

# TABLE OF AUTHORITIES
## (continued)

Page

*Jones v. WMATA*,
   205 F.3d 428 (D.C. Cir. 2000)......................................................20, 53

*Lebron v. Nat'l R.R. Passenger Corp. (Amtrak)*,
   69 F.3d 650 (2d Cir.), *opinion amended on denial of reh'g*, 89 F.3d
   39 (2d Cir. 1995)..........................................................29, 31, 36, 40

*\*Lehman v. City of Shaker Heights*,
   418 U.S. 298 (1974).......................... 16, 22, 25, 26, 30, 32, 35, 36, 40

*Lizzi v. Alexander*,
   255 F.3d 128 (4th Cir. 2001) ...............................................................52

*Lucero-Nelson v. WMATA*,
   1 F. Supp. 2d 1 (D.D.C.1998)...............................................................52

*Matal v. Tam*,
   137 S. Ct. 1744 (2017).....................................................................26, 27

*Metromedia, Inc. v. City of San Diego*,
   453 U.S. 490 (1981).....................................................................31, 32, 33

*Morris v. WMATA*,
   781 F. 2d 218 (D.C. Cir. 1986)..........................................................20, 52, 53

*NAACP v. City of Philadelphia*,
   834 F.3d 435 (3d Cir. 2016) ...............................................................36

*Nat'l Black Police Ass'n v. District of Columbia*,
   108 F.3d 346 (D.C. Cir. 1997).......................................................20, 49, 50, 51

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
   460 U.S. 37 (1983).........................................................................23, 28, 41, 44

*Perry v. McDonald*,
   280 F.3d 159 (2d Cir. 2001) ...............................................................27

*Plater v. Dist. of Columbia Dep't of Transp.*,
   530 F. Supp. 2d 101 (D.D.C. 2008).....................................................53

# TABLE OF AUTHORITIES
## (continued)

Page

*Pleasant Grove City v. Summum*,
  555 U.S. 460 (2009) ............................................................................ 15

*Police Department of the City of Chicago v. Mosley*,
  408 U.S. 92 (1972) ............................................................................. 31

*R.A.V. v. City of St. Paul*,
  505 U.S. 377 (1992) ........................................................................... 22

*\*Ridley v. Massachusetts Bay Transp. Auth.*,
  390 F.3d 65 (1st Cir. 2004) ........................................ 5, 18, 19, 29, 43, 45, 46, 47

*Rosenberger v. Rector & Visitors of Univ. of Virginia*,
  515 U.S. 819 (1995) ........................................................................... 33

*Se. Promotions, Ltd. v. Conrad*,
  420 U.S. 546 (1975) ........................................................................... 38

*Seattle Mideast Awareness Campaign v. King Cty.*,
  781 F.3d 489 (9th Cir. 2015) .............................................................. 23

*Souders v. WMATA*,
  48 F.3d 546 (D.C. Cir. 1995) ............................................................. 54

*Tapp v. WMATA*,
  No. 15-CV-0768 (KBJ), 2016 WL 7441719 (D.D.C. Sept. 30,
  2016) .................................................................................................. 52

*Thomas v. Chicago Park Dist.*,
  534 U.S. 316 (2002) ......................................................................... 5, 29

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
  135 S. Ct. 2239 (2015) ....................................................................... 22

*Will v. Michigan Dep't of State Police*,
  491 U.S. 58 (1989) ...................................................................... 20, 52, 53, 54

*Ex Parte Young*,
  209 U.S. 123 (1908) ........................................................................... 55

vi

## TABLE OF AUTHORITIES
### (continued)

**Page**

FEDERAL STATUTES

42 U.S.C. § 1983 .................................................................. 2, 16, 20, 51, 52, 53, 54

STATUTES - OTHER

D.C. Code § 9-1107.01 (80)...............................................................................54, 55

# GLOSSARY OF ABBREVIATIONS

| AFDI | American Freedom Defense Initiative |
|------|-------------------------------------|
| WMATA | Washington Metropolitan Area Transit Authority |

## STATEMENT OF ISSUES

1. Whether the district court correctly found that Defendant-Appellee Washington Metropolitan Area Transit Authority (WMATA) properly rejected Plaintiff-Appellant's American Freedom Defense Initiative's (AFDI) application to post an advertisement in WMATA's stations and on its Metrobuses pursuant to its viewpoint-neutral and reasonable restrictions on issue-oriented advertisements in a nonpublic forum.

2. Whether, under 42 U.S.C. § 1983, WMATA is liable for any asserted constitutional violation, and whether its officers are liable for money damages.

## INTRODUCTION

For decades, Defendant-Appellee Washington Metropolitan Area Transit Authority (WMATA or Metro) operated the advertising space in its transit system as a designated public forum, accepting a wide range of advertisements. In recent years, WMATA became concerned about the adverse effects of advertisements that advocated for positions on issues of public debate. These advertisements routinely provoked community and employee opposition, sparked security concerns, led to vandalism, and caused administrative burdens. In May of 2015, these problems finally came to a head when Plaintiff-Appellant American Freedom Defense Initiative (AFDI) submitted an issue-oriented advertisement featuring a cartoon of the Prophet Muhammad.

Based on its longstanding concerns about public advocacy advertisements, as well as worries about the particular advertisement that AFDI had submitted, WMATA placed a moratorium on *all* issue-oriented advertisements while it reconsidered its policy operating a designated public forum. It rejected AFDI's Prophet Muhammad advertisement while that moratorium was in effect. Six months later, after conducting a careful and thorough process that included intensive consultation with various stakeholders, WMATA adopted a permanent policy barring all issue-oriented advertisements, regardless of viewpoint. In so

3

doing, like many transit systems across the United States, WMATA transformed its advertising space into a nonpublic forum.

Although AFDI offers a hodgepodge of arguments in this appeal, at bottom it contends that WMATA changed its forum and rejected AFDI's Prophet Muhammad advertisement because it disagreed with the advertisement's message. These arguments come in two forms: (1) that WMATA engaged in viewpoint discrimination when it rejected the Prophet Muhammad advertisement within its new nonpublic forum; and (2) that WMATA made the switch to that nonpublic forum as a pretext for discriminating against AFDI's speech on the basis of its viewpoint. But both arguments are meritless for the same reasons: AFDI has presented no record evidence or legal precedents indicating that WMATA's decisions were anything other than viewpoint-neutral and non-pretextual.

Looking backward, AFDI does not dispute the record evidence showing that WMATA had been concerned about issue-oriented advertisements for years. Nor does it present any evidence that WMATA's decisions to change its forum and reject the Prophet Muhammad advertisement were based on unreasonable concerns. To the contrary, WMATA based its decision on an established history of legitimate concerns, including employee and customer complaints, administrative burdens, and well-founded fears of violence similar to what had occurred in Garland, Texas the *same month* that AFDI submitted its Prophet Muhammad

4

advertisement to WMATA. *See, e.g.*, JA 112-116 (email and article describing the history of security risks associated with Prophet Muhammad advertisements submitted by AFDI). And looking forward, as the district court observed, AFDI *has offered no record evidence* that WMATA has applied its facially-neutral policy in an inconsistent manner in the two-plus years since that policy was announced. As such, even if AFDI could show that WMATA changed its policy solely because of the Prophet Muhammad advertisement—and it cannot—its evenhanded application of this policy fails to demonstrate the "pattern of unlawful favoritism" that would render it unconstitutional. *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 325 (2002).

Ultimately, because AFDI agrees that a government body like WMATA can close its forum at will, *see Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985), and because "the totality of evidence" submitted below demonstrates that WMATA's policy is a not a pretext to silence AFDI's viewpoint, *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 89 (1st Cir. 2004), AFDI cannot prevail on its First and Fourteenth Amendment claims.

## STATEMENT OF PERTINENT AUTHORITIES

All relevant portions of pertinent statutes and regulations are set forth in the body of this brief.

# STATEMENT OF THE CASE

### A.    Statement of facts

WMATA is an interstate compact agency and instrumentality of Maryland, Virginia, and the District of Columbia.  *See* Compl. ¶ 12, JA 12-13.  WMATA operates the Metrorail and Metrobus systems in the Washington, D.C. metropolitan area.  WMATA raises revenue through multiple channels, including from fares paid by customers and by selling advertising space in Metrorail stations and on Metrorial trains and Metrobuses.  *See* Bowersox Dep. 36, JA 80.  Beginning in the 1970s, WMATA accepted a broad range of advertisements throughout its transit system.  *See id.* at 38, JA 81.  With some exceptions, WMATA accepted issue-oriented advertisements, including political, religious, and issue-advocacy advertising.  *See id*. at 38-39, JA 81.

Over time, however, controversies arose regarding advertisements that took positions on matters of public debate, including advertisements that criticized political figures or were considered disrespectful of religious groups.  Since 2010, in particular, the posting of issue-oriented advertisements has led to substantial "consternation" within the community.  *See* Bowersox Dep. 39-40, JA 80.  Controversial advertisements promoting particular policy positions led to widespread "concern":

> [Certain advertisements] created a lot of feedback from [WMATA] employees, from [WMATA] riders, from the elected officials in the

7

surrounding region, from the community leaders and from business leaders in this region, all of whom wrote or called, talked to us, talked to the media, etc., expressing their dissatisfaction with our running of such ads, accepting them on the system.

*Id.* at 40, JA 126.  During this period, WMATA was reviewing advertisements that raised such concerns "monthly."  *Id.*

The advertisements that led to these reactions from employees and members of the community reflected a wide range of perspectives and policy views. Among those advertisements that led to complaints included:

- advertisements from PETA that "were disturbing to some people showing animal cruelty";

- "condom advertising in some messaging that was geared towards AIDS awareness and prevention";

- advertisements related to marijuana legalization;

- advertisements regarding sexual orientation;

- a "quite controversial" advertisement by the Airline Association related to the "Open Skies" policy; *and*

- advertisements that were critical of government healthcare policies.

*See id.*

Given this "consternation" and "concern," WMATA's leadership spent "nearly 5 years of looking at the issue."  *See id.* at 41, JA 127.  By 2015, WMATA's leadership "became concerned that the value of the commercial revenues being generated by controversial ads might be outweighed by other

8

considerations that a public agency such as WMATA has and the role we play in the community and the role we play with our riders and our employees." *Id.* at 41, JA 127.

Four considerations—community and employee opposition, security risks, vandalism, and administrative burdens—motivated WMATA's concerns regarding issue-oriented advertising. *First*, issue-oriented advertisements led to "community opposition," "negative publicity for WMATA," and "claims from some leaders in the community that [WMATA was] perpetuating discrimination by carrying certain messages from certain advertisers." *Id.* at 43, JA 129. WMATA employees also "took offense to some of our messages that they saw in controversial ads, and unlike [WMATA] riders[, they] were not temporarily passing by, but … were subjected to the message over and over and over again for hours and days and weeks and months." *Id.*

*Second*, issue-oriented advertisements sparked concerns about security. Both the Metro Transit Police Department and the U.S. Department of Homeland Security feared that certain advertisements would, due to external world events, lead individuals to "incite violence on the system" and harm WMATA employees and customers. *Id.* at 45, JA 131. For example, Assistant General Manager for Customer Service, Communications, and Marketing, Lynn Bowersox, noted that a cartoon featuring the Prophet Muhammad led to "local violence" in Texas because

"the drawing of the Prophet Mohammad in any certain fashion was so offensive to certain members of the Islamic community that it could cause people to react in a violent manner."  *Id*. at 46-47, JA 132-33; *see also id.* at 102, JA 136 (noting a broader concern that AFDI's advertisement could lead to violence in the community); JA 112-116 (email to Ms. Bowersox containing article about AFDI's submission of Prophet Muhammad advertisement and the history of violence associated with such advertisements, including the May 2015 shooting at a community center in Garland, Texas).

*Third*, the advertisements led to vandalism, with messages contrary to those being advocated in the advertisement being written on the advertisements themselves.  *See* Bowersox Dep. 44-45, JA 130-31.

*Fourth*, because of the controversy that the advertisements were generating, WMATA experienced substantial administrative burdens from reviewing them. *See id.* at 47-48, JA 133-34.

On May 20, 2015, plaintiff-appellant American Freedom Defense Initiative (AFDI) submitted an advertisement to be placed on twenty WMATA buses and five dioramas in WMATA stations.  *See* Compl. ¶ 22, JA 15.[1]  AFDI is a nonprofit

---

[1] The Plaintiffs in this case—AFDI, its president Pamela Gellar, and its vice president Robert Spencer—are together referred to as AFDI.  Although the advertisements to be displayed on the buses contained different proportions, they contain the same content, and are therefore referred to as one advertisement herein.

organization that routinely purchases advertising space on transit authority

property in cities throughout the country in order to spread a message that one

court described as "a combination of political speech in favor of Israel and hate

speech directed against Muslims."  *AFDI v. WMATA* (*AFDI v. WMATA I*), 898 F.

Supp. 2d 73, 76 (D.D.C. 2012).[2]  The advertisement at issue in this case is a

cartoon that features an image of the Prophet Muhammad wielding a sword, who

states "YOU CAN'T DRAW ME," and a response from the cartoonist stating

"THAT'S WHY I DRAW YOU."  The advertisement states in large letters at its

top: "SUPPORT FREE SPEECH."  AFDI Brief 7-8 (containing an image of the

proposed advertisement).

After AFDI submitted its Prophet Muhammad advertisement, but before

WMATA made any decision whether to run it, WMATA determined that it would

temporarily bar issue-oriented advertisements.  *See* Memorandum Opinion 5, JA

148.  "[A]fter looking at all of the factors" relevant to WMATA's many

"stakeholders," Bowersox "recommend[ed] to the board we ought to stop and

---

[2] Some previous advertisements that AFDI has attempted to display in transit systems include a series reading: "IN ANY WAR BETWEEN THE CIVILIZED MAN AND THE SAVAGE, SUPPORT THE CIVILIZED MAN.  SUPPORT ISRAEL.  DEFEAT JIHAD."  *AFDI v. Mass. Bay Transp. Auth.*, 781 F. 3d 571, 575 (1st Cir. 2015); *AFDI v. WMATA I*, 898 F. Supp. 2d at 75; and one portraying a "menacing-looking man whose head and face are mostly covered by a head scarf," and included a quote which read: "Killing Jews is Worship that draws us close to Allah," stating underneath, "That's His Jihad.  *What's yours?*"  *AFDI v. Metro. Transp. Auth.* (*AFDI v. MTA*), 815 F. 3d 105, 108 (2nd Cir. 2016).

review whether or not controversial ads and the value they generated were worthwhile in serving transportation for the agency." *Id.* at 42, JA 128. The WMATA Board of Directors agreed. It made this decision based on its long-standing concerns regarding the effects of issue-oriented advertising on its customers, employees, and the community. *See* Bowersox Dep. 42-43, JA 129; *id.* at 49, JA 135 (noting that the decision was based on the "cumulative" effect of the "number of controversial ads that had come in through the pipeline"). Bowersox, the WMATA official who oversaw the advertising program, also acknowledged that AFDI's advertisement played a role in the timing of the decision to impose a moratorium on issue-oriented advertising. That is, the AFDI advertisement was the final impetus, or "the straw that broke the camel's back," for WMATA to make the change it had been contemplating as a result of the problems it experienced with similar issue-oriented advertisements over the years. *Id.*

On May 28, 2015, the WMATA Board of Directors passed a motion "clos[ing] WMATA's advertising space to any and all issue-oriented advertising, including but not limited to, political, religious, and advocacy advertising until the end of the calendar year." *See* Mot. by Chair of Bd. of Dirs., JA 34. The motion further explained that during the remainder of 2015, "the Board will review what role such issue-oriented advertising has in WMATA's mission to deliver, safe, equitable, and reliable transportation services to the Nation's Capital, and will seek

12

public comment and participation for its consideration before making a final policy determination." *Id.* Pursuant to the temporary pause on accepting issue-oriented advertisements while it conducted this review, WMATA rejected AFDI's advertisement. *See* Decl. of Pamela Geller ¶ 21, JA 44.

### B.    Procedural history

On July 1, 2015, AFDI brought suit against WMATA and its Interim General Manager and CEO Jack Requa,[3] alleging that WMATA had violated the First Amendment and Equal Protection Clause of the United States Constitution. *See* Compl. ¶¶ 31-38, JA 16-18. According to AFDI, WMATA's moratorium on issue-oriented speech was "adopted for the purpose of suppressing [AFDI's] speech." *See id.* ¶ 28, JA 16. AFDI sought declaratory and injunctive relief, as well as nominal damages. *See id.* at 9, JA 18. The parties engaged in limited discovery and filed cross-motions for summary judgment. *See* Mem. Op. 1-2, JA 144-45.

While the litigation was ongoing, on November 19, 2015, the WMATA Board of Directors adopted a resolution permanently closing WMATA's advertising space to issue-oriented advertising. *See* Bd. Resolution, JA 35-36. The resolution explained that, consistent with the May 28, 2015 motion, WMATA had

---

[3] Paul J. Wiedefeld has since become General Manager and CEO of WMATA and was substituted as a defendant.

13

conducted a review of issue-oriented advertising, including a survey of the public. *See id.*, JA at 35.  Based on that review, the Board determined that it would adopt commercial advertising guidelines to administer its new policy closing WMATA's commercial advertising space to issue-oriented advertisements.  *See id.*

> Among the Guidelines that the WMATA Board adopted are:
>
> 9. Advertisements intended to influence members of the public regarding an issue on which there are varying opinions are prohibited.
>
> …
>
> 12. Advertisements that promote or oppose any religion, religious practice or belief are prohibited.
>
> …
>
> 14. Advertisements that are intended to influence public policy are prohibited.

Guidelines Governing Commercial Advertising, JA 37-38.  After WMATA adopted the resolution and the Guidelines to implement it, AFDI did not amend its complaint  to challenge the new policy.

The district court granted WMATA's motion for summary judgment.  *See* Mem. Op. 1-2, JA 144-45.  The court determined that WMATA's rejection of AFDI's advertisement did not offend the First Amendment.  It first explained that while WMATA's advertising space had previously been a designated public forum, WMATA's May 28, 2015 decision to ban issue-oriented advertisements converted its advertising space into a nonpublic forum.  *See id.* at 9, JA 152.  The

14

court found that to the extent that AFDI attempted to bring its claims under the pre-May 28, 2015 policy, WMATA's adoption of the new policy rendered those claims moot. *See id.* at 10 n.1, JA 153. Because AFDI's advertisement was rejected under this new policy, WMATA needed only to show that its new policy was viewpoint neutral and reasonable. *See id.* at 9, JA 152 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460, 470 (2009)).

The district court next determined that WMATA's policy was viewpoint neutral. First, the court rejected AFDI's argument that the timing of WMATA's change in policy showed that it was a pretext for targeting AFDI's advertisement. *See id.* at 11-12, JA 154-55. At the outset, it noted that the parties agree that "the government has a right to convert a designated public forum into a nonpublic forum." *Id.* at 9, JA 152. With that in mind, the court explained that even interpreting the evidence in the light most favorable to AFDI, Bowersox's statement that AFDI's advertisement was "the straw that broke the camel's back" shows only that "WMATA had previously been considering a policy change for other reasons and only saw Plaintiffs' ad as additional support for their previous thinking." *Id.* at 12, JA 155. The court also noted that plaintiffs had submitted no evidence showing that WMATA had inconsistently enforced its new guidelines in a manner that showed preference for some ideas over others. *See id.* at 13, JA 156.

Turning to the second part of the test for a nonpublic forum, the district court determined that WMATA's restriction of speech was reasonable. It noted that WMATA had explained how issue-oriented speech interfered with its operations, including that the advertisements had led to vandalism and created an administrative burden. *See id.* at 14, JA 157. The court observed that similar explanations had proven sufficient in other cases involving public transit authorities. *See id.* at 14-15, JA 157-58 (citing *Lehman v. City of Shaker Heights*, 418 U.S. 298, 304 (1974), and *AFDI v. Suburban Mobility Auth. For Reg'l Transp.* (*AFDI v. SMART*), 698 F. 3d 885, 892-93 (6th Cir. 2012)).

The district court concluded by determining that the May 28, 2015 ban on "issue-oriented" advertising, as well as the Guidelines adopted in November 2015, were "not unconstitutionally vague." *Id.* at 15-16, JA 158-59. It held that both the initial policy and the further explication in the Guidelines would allow a person to "readily identify the applicable standard." *Id.* at 16 (quoting *AFDI v. SMART*, 698 F. 3d at 893). Because it found that WMATA had not run afoul of the First Amendment, the district court declined to reach the question of whether WMATA or its general manager could be liable for nominal damages under 42 U.S.C. § 1983, or were instead protected by sovereign immunity. *See id.* at 16 n.3, JA 159. This appeal followed.

16

## SUMMARY OF THE ARGUMENT

WMATA's decision to reject AFDI's Prophet Muhammad advertisement did not violate the First or Fourteenth Amendments.  The advertising space in WMATA's transit system is a nonpublic forum.  A government body establishes a nonpublic forum where it makes clear its intent to permit only some categories of speech.  *See Initiative & Referendum Inst. v. U.S. Postal Serv.*, 685 F.3d 1066, 1072-73 (D.C. Cir. 2012).  That is exactly what WMATA did when it changed its policy to no longer accept issue-oriented advertisements.

In a nonpublic forum like the one at issue here, a government entity may place regulations on the content of speech so long as those restrictions are both viewpoint neutral and reasonable.  *See id.* at 1070.  WMATA's restrictions on "issue-oriented" advertisements easily satisfy both criteria.  *First*, the policy makes no distinction based on a speaker's point of view.  Instead, it restricts only speech addressing "topic[s]" not deemed appropriate for the forum, regardless of the position espoused.  *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985).  This even-handed restriction is a quintessential viewpoint-neutral policy.  *Second*, WMATA's policy is reasonable, as it "is consistent with the government's legitimate interest in maintaining the property for its dedicated use." *Initiative & Referendum Inst.*, 685 F.3d at 1073.  Unrefuted record evidence makes clear that WMATA determined that for many years issue-oriented advertising had

17

harmed its ability to effectively operate within the community. After carefully examining the costs and benefits of continuing to accept such advertisements, WMATA reasonably determined that community and employee opposition, risks of violence and vandalism, and administrative burdens outweighed the benefits of additional revenue from issue-oriented advertising.

AFDI erroneously argues WMATA's decision to convert its forum from a designated public forum to a nonpublic forum was a pretext to discriminate against AFDI's message. This contention fails both as a matter of fact and of law. AFDI concedes that government bodies like WMATA generally have the authority to close their designated public forums at any time. *See Cornelius*, 473 U.S. at 802. And the undisputed facts of this case show that WMATA changed its forum not as a pretext to discriminate against AFDI's message, but instead because of longstanding concerns about the effects of issue-oriented advertising, including the grave security risks associated with AFDI's Prophet Muhammad advertisement.

In the face of this unrefuted record evidence, AFDI relies solely on the timing of WMATA's forum change to allege discriminatory motive. But numerous precedents make clear that altering the nature of a forum during pending litigation over a government's policy does not cast doubt on a government's decision to close its forum. *See, e.g.*, *Initiative & Referendum Inst.*, 685 F.3d at 1069-70; *AFDI v. MTA*, 815 F.3d 105, 108 (2d Cir. 2016); *Ridley v. Mass. Bay*

*Transp. Auth.*, 390 F.3d 65, 74-75, 77 (1st Cir. 2004).  Here, WMATA closed its

forum *before* AFDI brought suit, which makes this case even stronger than those in

which courts held that policy changes *during* litigation did not establish a pretext

for viewpoint discrimination.  In short, this Court should similarly conclude that

timing alone is not enough to infer pretext.

      In any event, even if AFDI could establish, in spite of the district court's

findings to the contrary, that its Prophet Muhammad advertisement was the sole

cause of WMATA's decision to close its forum, that would still not prove that

WMATA's actions were a pretext to discriminate against AFDI's message.  That is

because AFDI has presented no *record evidence* of pretext.  In order to prevail on

such a claim, AFDI's own cases hold that AFDI would need to show, at minimum,

that WMATA either changed its policy in order to silence AFDI's disfavored

viewpoint, or that WMATA has applied its policy in an inconsistent manner in the

time since its rejection of AFDI's advertisement.  *See Ridley*, 390 F.3d at 87.

AFDI has offered absolutely no such evidence and therefore can make none of

these showings.  Its First and Fourteenth Amendment claims consequently fail.

      AFDI's alternative argument that it is entitled to relief under WMATA's

pre-May 28, 2015 policy, pursuant to which it operated a designated public forum,

is doubly flawed.  *First*, as the district court found, WMATA rejected AFDI's

advertisement under its May 28, 2015 policy.  Accordingly, any claim must arise

19

out of this revised policy, not the earlier policy it may be attempting to challenge. *See* Memorandum Opinion 5, JA 148.  But even if AFDI could have previously sought declaratory and injunctive relief under WMATA's pre-May 28, 2015 policy, AFDI has presented no evidence to suggest that WMATA will revert back to its old policy, and its prior policy has no continuing effects on AFDI.  *See Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997). The district court thus properly found that any claim under WMATA's pre-May 28, 2015 policy was moot.

Finally, if this Court were to find that AFDI presents valid First or Fourteenth Amendment claims, AFDI's claims against WMATA still fail as a matter of law because WMATA cannot be held liable under 42 U.S.C. § 1983. This Court's precedents have left no doubt that state agencies are immune from suit under Section 1983, and that WMATA, created by a compact between Maryland, the District of Columbia, and Virginia, is a state entity for purposes of the statute.  *See Jones v. WMATA*, 205 F.3d 428, 432 (D.C. Cir. 2000); *Morris v. WMATA*, 781 F. 2d 218, 219 (D.C. Cir. 1986).  Similarly, WMATA's general manager, who AFDI sued in his official capacity, is not liable for damages under Section 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

## ARGUMENT

### I.   Standard Of Review

This Court reviews a district court's grant of summary judgement *de novo*.

*See Coleman v. District of Columbia*, 794 F.3d 49, 57 (D.C. Cir. 2015).  "And

'because [this Court] review[s] the district court's judgment, not its reasoning, [it]

may affirm on any ground properly raised.'" *Jones v. Bernanke*, 557 F.3d 670, 674

(D.C. Cir. 2009) (quoting *EEOC v. Aramark Corp.,* 208 F.3d 266, 268 (D.C. Cir.

2000)).

### II.   The District Court Properly Denied AFDI's First Amendment And Equal Protection Claims

#### A.   WMATA properly rejected AFDI's advertisement pursuant to the policy in force at the time of its decision

Where the government seeks to regulate speech on public property, courts

follow a three-step analysis under the public forum doctrine.  *See Cornelius v.

NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985).  First, a court

must determine whether the expression at issue is protected speech under the First

Amendment.  *See id.*  Next, a court must identify the type of forum in which the

speech takes place.  *See id.*  Once a court classifies the forum, it must determine

whether a government's rationale for restricting speech meets the standard that

applies to the relevant forum.  *See id.*

Applying this analysis to AFDI's advertisement,[4] the district court properly found that WMATA's advertising space was a nonpublic forum. *See* Mem. Op. 9, JA 152. It then correctly determined that WMATA's policy was viewpoint neutral and reasonable, *see id.* at 9-15, JA 152-58, and that it was not void for vagueness, *see id.* at 15-16, JA 158-59. This Court should do the same.

    1.    *WMATA's May 28, 2015 policy converted its advertising space into a nonpublic forum*

Under the public forum doctrine, public property is divided into three categories: 1) traditional public forums, 2) designated public forums, and 3) nonpublic forums.[5] *See Cornelius*, 473 U.S. at 800. The extent to which the

---

[4] AFDI's advertisement is protected speech. *See* Mem. Op. 7, JA 150.

[5] The Supreme Court has sometimes used the term "limited public forum" interchangeably with "nonpublic forum." Regardless of its chosen terminology, the Court has made clear that both terms refer to public property opened for use by particular groups or for particular purposes, and that the same test applies regardless of the term in use. *Compare R.A.V. v. City of St. Paul*, 505 U.S. 377, 390 n.6 (1992) (noting that in "nonpublic forums," the government can engage in "reasonable and viewpoint neutral content-based discrimination"), *with Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 679 n.11 (2010) (noting that in "limited public forums," the government "may impose restrictions on speech that are reasonable and viewpoint neutral"). The Supreme Court found in *Lehman v. City of Shaker Heights*, 418 U.S. 298, 299 (1974) (plurality opinion), that a government entity could limit political speech in the advertising space on city buses; the Supreme Court has frequently described the city's policy in *Lehman* as creating a "nonpublic forum." *See Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2252 (2015); *R.A.V.*, 505 U.S. at 390 n.6. Regardless of the terminology used, in the transit context, "[t]he label ['limited' or 'nonpublic'] doesn't matter, because the same level of First Amendment scrutiny applies to all

government can permissibly regulate speech "depends on the nature of the relevant forum." *Id.* WMATA's advertising space is not a traditional public forum, as AFDI concedes. *See* AFDI Brief 24. The appropriate degree of First Amendment scrutiny therefore depends on whether that advertising space should be treated as a nonpublic forum or a designated public forum.

A nonpublic forum is "[p]ublic property which is 'not by tradition or designation a forum for public communication.'" *Initiative & Referendum Inst.*, 685 F.3d at 1070 (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)). For such property, "the government may 'reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Id.* This standard for a nonpublic forum thus requires only that the government's restrictions on speech be viewpoint neutral and reasonable.

---

forums that aren't traditional or designated forums." *Seattle Mideast Awareness Campaign v. King Cty.*, 781 F.3d 489, 496 n.2 (9th Cir. 2015).

In its brief, AFDI admits that these terms are used interchangeably, including in controlling precedent in this Circuit. *See* AFDI Brief 23 n.5 (citing *Initiative & Referendum Inst. v. U.S. Postal Serv.*, 685 F.3d 1066 (D.C. Cir. 2012). AFDI argues that the Supreme Court and this Court have made a "mistake" in their application of the forum doctrine. *Id.* It suggests, absent any citation to applicable case law, that this Court should create a new subcategory including transit advertising space, and apply a stricter test than Supreme Court precedent dictates. *See id.* This insubstantial argument acts only to confirm that AFDI cannot prevail under well-established precedent.

23

By contrast, a designated public forum is government property "not traditionally open to assembly and debate as a public forum," but which the government has affirmatively chosen to designate for use "by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." *Cornelius*, 473 U.S. at 802.  The opening of a designated public forum must be intentional, and the government may alter the open nature of the forum over time.  *See id.*  So long as the government maintains a designated public forum, restrictions on speech are, as with traditional public forums, subject to strict scrutiny if they are content-based, and to the time-place-or-manner test if they are content-neutral.  *See Initiative & Referendum Inst.*, 685 F.3d at 1070.

When WMATA closed its advertising space to issue-oriented advertisements on May 28, 2015, it created a nonpublic forum, as the district court correctly held. *See* Mem. Op. 9, JA 152  ("[WMATA's] advertising space was a nonpublic forum when it rejected AFDI's ad, and therefore the rejection should be analyzed under the standard that applies to nonpublic forums.").  In order for a government to create a nonpublic forum, it need only express its *intent* to limit a forum to some categories of speech.  *See Initiative & Referendum Inst.*, 685 F.3d at 1072-73.  That is precisely what WMATA has done here.  It made clear in its May 28, 2015 Motion closing its advertising space, as well as in the November 19, 2015 Guidelines, that it was allowing only "limited discourse" in its advertising space.

Where the government exerts "tight control over the advertising space" and enacts "multiple rules governing advertising content," this makes "the space incompatible with the public discourse, assembly, and debate that characterize a designated public forum." *AFDI v. SMART*, 698 F.3d 885, 890 (6th Cir. 2012). In other words, it creates the paradigmatic nonpublic forum. *See id.*

This is particularly true where the government bars "political advertisements, speech that is the hallmark of a public forum." *Id.*; *see also AFDI v. MTA*, 815 F.3d 105, 108 (2d Cir. 2016) (finding that where a metro authority barred political advertising, it converted its advertising space into a nonpublic forum). For this reason, the Supreme Court ruled in *Lehman v. City of Shaker Heights*, 418 U.S. 298 (1974), that city buses were not a public forum where city policy barred political advertising. The court explained that, under these circumstances, the "managerial decision to limit [advertising] space to innocuous and less controversial commercial and service oriented advertising does not rise to the dignity of a First Amendment violation." *Id.* at 304 (plurality opinion); *see also id.* at 305-08 (Douglas, J., concurring) (also finding that the advertising space was not a public forum). So too here, where WMATA has established a nonpublic forum by banning issue-oriented and political advertisements.

AFDI nevertheless contends that WMATA has created a designated public forum by opening its advertising space to *some* speech. *See* AFDI Brief 24 & n.6.

25

According to AFDI, the government can create a nonpublic forum only by

"shutting down _all_ speech."  AFDI Brief 24-25 n.6 (emphasis in original).  AFDI's

argument flies in the face of this Court's precedent, which holds that "allow[ing]

certain expressive activities on [government property] does not transform [the

property] into designated public forums."  _Initiative & Referendum Inst._, 685 F.3d

at 1072; _see also Arkansas Educ. Television Comm'n v. Forbes_, 523 U.S. 666, 679

(1998) (noting that "selective access" is the hallmark of a nonpublic forum);

_Lehman_, 418 U.S. at 304 (decision to allow non-political advertisements does not

create a designated public forum).  Instead, in order for this Court to determine that

a non-traditional public forum has been designated as a public forum, there must

be evidence that the government has made its property "'generally available' for

expressive activity."  _Initiative & Referendum Inst._, 685 F.3d at 1072 (quoting

_Forbes,_ 523 U.S. at 677).  WMATA has done nothing of the sort.

　　　AFDI's flouting of clear, settled precedent regarding the forum doctrine

renders much of its brief inapposite.  To begin, because WMATA's forum is non-

public, and its restrictions consequently need only be viewpoint neutral and

reasonable, AFDI's extended argument that WMATA's regulations are content-

based is entirely beside the point.  _See_ AFDI Brief 31-34.  Similarly, AFDI's frolic

and detour through _Matal v. Tam_, 137 S. Ct. 1744 (2017), sheds no light on the

issue before this Court.  _See_ AFDI Brief 18-21.  That case has nothing to do with

public forum doctrine.  In *Tam*, there was little question that the government was engaging in viewpoint discrimination, and the Supreme Court struck down the law at issue for that reason.  *See* 137 S. Ct. at 1763 (plurality opinion); *id*. at 1765-69 (opinion of Kennedy, J., concurring).  In this case, WMATA's policy is viewpoint neutral, and AFDI has presented no evidence that the regulation is applied in a manner that discriminates on the basis of viewpoint.  *See* Section II.A.2, *infra*.

Finally, AFDI goes on for page after page arguing that issue-oriented advertising is a "prior restraint" subject to a "heavy presumption against constitutional validity."  *See* AFDI Brief 21-23 (quoting *AFDI v. WMATA I*, 898 F. Supp. 2d at 79).  That is plainly wrong.  "A nonpublic forum by definition is characterized by 'selective access,' which necessarily means that the state can select or limit who may speak and what may be said *prior to its expression*."  *Perry v. McDonald*, 280 F.3d 159, 171 (2d Cir. 2001) (quoting *Forbes,* 523 U.S. at 679). As a result, "a restriction on expression which would otherwise be deemed a prior restraint if it had been applied in a public forum is valid in a *nonpublic* forum as long as it is reasonable and viewpoint-neutral."  *Id.*  AFDI's repeated invocation of prior restraints is therefore irrelevant to this case.  *See Forbes*, 523 U.S. at 679-80 (finding that a state-sponsored televised election debate was a nonpublic forum, allowing state officials to exercise broad editorial discretion in deciding which candidates to invite); *Hazelwood v. Kuhlmeier,* 484 U.S. 260, 272-73 (1988)

(holding that a high school newspaper was a nonpublic forum and that school officials could consequently exert substantial *prepublication* control over its content).

> 2.  *WMATA's May 28, 2015 policy permissibly restricts speech in a nonpublic forum because it is viewpoint neutral and reasonable*

Because WMATA's May 28, 2015 policy converted its advertising space into a nonpublic forum, its policy must be viewpoint neutral and reasonable in light of the purpose that the forum serves.  *See Perry*, 460 U.S. at 46, 49.  As the district court correctly found on the basis of undisputed facts, WMATA can easily satisfy both requirements.

> (a)    *WMATA's policy is viewpoint neutral*

WMATA's May 28, 2015 policy banning "issue-oriented advertising, including but not limited to, political, religious, and advocacy advertising" is quintessentially viewpoint neutral.  In a nonpublic forum, "a speaker may be excluded … if he wishes to address a topic not encompassed within the purpose of the forum, or if he is not a member of the class of speakers for whose especial benefit the forum was created," so long as the speaker is not denied access "solely to suppress the point of view he espouses."  *Cornelius*, 473 U.S. at 806 (citation omitted).  WMATA's policy makes no distinctions based on point of view; instead it bars only a category—or "topic"—of speech: issue-oriented advertising.  It

28

makes no difference under WMATA's policy what political or religious viewpoint a speaker is supporting. So long as the speech addresses a political or religious topic, WMATA will not accept the advertisement in its forum. For this reason, numerous courts of appeals have upheld similar bans on issue-oriented advertising in transit authority advertising space as viewpoint neutral. *See, e.g.*, *AFDI v. SMART*, 698 F.3d at 895 (finding that a policy barring political advertisements is viewpoint neutral); *Lebron v. Nat'l R.R. Passenger Corp. (Amtrak)*, 69 F.3d 650, 658 (2d Cir.), *opinion amended on denial of reh'g,* 89 F.3d 39 (2d Cir. 1995) (same).

To be sure, as AFDI notes, a purportedly "evenhanded rule excluding expression on [WMATA's] property" may still be found impermissible if the regulation "'is in reality a facade for viewpoint-based discrimination.'" AFDI Brief 35 (quoting *Cornelius*, 473 U.S. at 811). But to make such a showing, AFDI would need to prove that WMATA's facially neutral policy is being enforced in a manner that discriminates against particular viewpoints. *See, e.g.*, *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 325 (2002) (requiring "a pattern of unlawful favoritism" to find that a facially viewpoint-neutral policy is being improperly enforced); *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 87 (1st Cir. 2004) (requiring that a party present evidence before a court will "conclude that, despite

29

the seemingly neutral justifications offered by the government, nonetheless the decision to exclude speech is a form of impermissible discrimination").

AFDI cannot come close to making such a showing. Instead, the record is devoid of such evidence, because no such evidence exists. To the contrary, Bowersox stated in her deposition that "to [her] knowledge," WMATA has not accepted any advertisements "contain[ing] advocacy issues or religious issues or political issues" since the passage of WMATA's new policy. *See* Bowersox Dep. 113, JA 91. Meanwhile, AFDI has not pointed to a single example—either in the record below or in its briefing to this Court—of WMATA enforcing its policy inconsistently, let alone in a manner that suggests that it has singled out AFDI's speech for disparate treatment based on its viewpoint.

In a last-ditch effort to salvage its case, AFDI advances the wildly overbroad argument that WMATA's policy banning "issue-oriented advertising" is, in fact, a *viewpoint-based* restriction on speech because it "favors commercial viewpoints over non-commercial viewpoints." AFDI Brief 36. That argument cannot be correct because it would dissolve the distinction between content-based and viewpoint-based restrictions. The Supreme Court has found that the "managerial decision to limit [advertising] space to innocuous and less controversial commercial and service oriented advertising did not rise to the dignity of a First Amendment violation," precisely because barring political advertisements from a

nonpublic forum was *content*, not *viewpoint-based* discrimination.  *Lehman*, 418
U.S. at 304.  Unsurprisingly, courts examining similar restrictions have
consistently found them to be viewpoint-neutral.  *See, e.g.*, *id.*; *AFDI v. SMART*,
698 F.3d at 895; *Lebron*, 69 F.3d at 658; *see also Children of the Rosary v. City of
Phoenix*, 154 F.3d 972, 981-82 (9th Cir. 1998); *Cambridge Christian School, Inc.
v. Florida High School Athletic Assn, Inc.*, No: 8:16–cv–2753–T–36AAS, 2017
WL 2458314, at *10 (M.D. Fla., June 7, 2017)  ("[E]xclusion of noncommercial
speech where commercial speech is permitted is a content-based restriction, not a
viewpoint-based restriction.  Accordingly, Cambridge Christian has failed to plead
that the FHSAA engaged in impermissible viewpoint discrimination in violation of
its rights under the Free Speech Clause of the First Amendment." ) (citation
omitted).  AFDI has not cited a single case finding that a ban on issue-oriented or
non-commercial advertising in a nonpublic forum was viewpoint-based.[6]

---

[6] AFDI's two-paragraph Equal Protection Clause argument fails for the same
reasons.  Citing *Police Department of the City of Chicago v. Mosley*, 408 U.S. 92
(1972), AFDI contends that WMATA violated the Equal Protection Clause
because it "has granted the use of a forum (its advertising space) for certain
speakers (those who want to express a 'commercial' message), but denied this
same forum to speakers (Plaintiffs) whose messages ('issue-oriented' viewpoints)
the government finds unacceptable."  AFDI Brief 45.  *Mosely* explained that the
"equal protection claim in this case is closely intertwined with First Amendment
interests," *Mosley*, 408 U.S. at 95, and the law is clear that there is no cognizable
distinction under the First Amendment between purported commercial and non-
commercial "viewpoints."

Instead, AFDI relies on an assortment of cases that have nothing to do with government-created forums.  As it did below, AFDI relies on the plurality opinion in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981), to argue that a ban favoring commercial speech over non-commercial speech is viewpoint based.  *See* AFDI Brief 37 & n.12.  But the district court was right to find that *Metromedia* cannot support the weight AFDI places on it.  *See* Mem. Op. 13 n.2, JA 156.

*Metromedia* involved an outdoor sign ordinance. The plurality explicitly stated that the ordinance at issue "presents the opposite situation from that in *Lehman v. City of Shaker Heights*," which involved "unique fact situations involving government-created forums."  *See* 453 U.S. at 514 n.19.  Because *Lehman* addressed advertising space on municipal buses and *Metromedia* did not, the Supreme Court made clear that the two contexts had "no application" to one another.  *Id.*

In any event, *Metromedia's* plurality found that the distinction the outdoor sign ordinance drew between commercial advertising and noncommercial advertising on a particular class of property violated the First Amendment because it was not *content-neutral*.  *See id.* at 514.  AFDI reimagines the opinion as one addressing viewpoint discrimination, *see* AFDI Brief 37 & n.12, but that opinion, like those discussed above, properly views the distinction between noncommercial and commercial advertising as one addressed at *content*.  AFDI's attempt to

32

transform *Metromedia* into a case about viewpoint discrimination is unavailing and further indication of just how radical a position it is advocating.[7]

### (b) WMATA's policy is reasonable

A regulation of speech in a nonpublic forum is "reasonable if it is consistent with the government's legitimate interest in maintaining the property for its dedicated use." *Initiative & Referendum Inst.*, 685 F.3d at 1073.  This standard does not impose a high bar: "[T]he restriction 'need only be *reasonable;* it need not be the most reasonable or the only reasonable limitation.'" *Id.* (quoting *Cornelius,* 473 U.S. at 808).

Over the course of several years, WMATA determined that accepting issue-oriented advertising harmed its ability to operate effectively.  As Bowersox

---

[7] AFDI's reliance on *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819 (1995), is similarly unavailing.  AFDI cites *Rosenberger* for the proposition that "the government acts unconstitutionally *even when it adopts an apparently evenhanded rule excluding expression on its property* if it acts with a motive to discourage or suppress a particular viewpoint."  AFDI Brief 35 (emphasis in original).  But as explained below, *see* Section II.B, *infra*, there is no indication in the record that WMATA acted with a motive to discourage or suppress a particular viewpoint.  And *Rosenberger* is inapposite for a separate reason.  In that case, the University of Virginia provided funds for printing of student publications on all manner of issues, but denied funding for content that "promote[d] or manifest[ed] a particular belie[f] in or about a deity or an ultimate reality."  515 U.S. at 822-23 (internal quotation marks omitted).  The Supreme Court struck down that restriction as viewpoint-based, because the university provided funding for all viewpoints *except* those about religion.  *See id.* at 829-32.  Here, WMATA has done nothing to single out a particular viewpoint; it has banned *all* issue-oriented advertisements regardless of their viewpoint.

explained in her unrefuted deposition testimony, beginning in 2010, WMATA became concerned about the effects of issue-oriented advertising. There was substantial community and employee opposition to several issue-oriented advertisements, which led to complaints that WMATA was "perpetuating discrimination" and eroded the morale of employees who "were subjected to the message over and over again for hours and days and weeks and years." *See* Bowersox Dep. 43, JA 129.

In addition, WMATA and the Department of Homeland Security worried about security issues surrounding the display of advertisements that might incite violence that could harm WMATA customers and employees. *See id.* at 46-47, 102, JA 132-33, 136. Bowersox specifically pointed to violence that occurred in Texas in connection with a drawing of the Prophet Muhammad, and she noted a concern that if such drawings were advertised within the WMATA system, it could lead to similar violence. It is therefore no surprise that AFDI's advertisement, coming after years of other security concerns, served as the "straw that broke the camel's back." Bowersox Dep. 42-43, JA 128-29. What is more, the prior issue-based advertisements led to vandalism, as customers defaced advertisements with messages contrary to those being advocated in the advertisements themselves. *See id.* at 44-45, JA 130-31. Finally, the controversy that issue-oriented advertisements

were generating increased administrative burdens by forcing WMATA to devote substantial time to addressing such advertisements. *See id.* at 47-48, JA 133-34.

The undisputed record establishes that WMATA carefully considered the advantages and drawbacks of accepting issue-oriented advertising. Due to these four sets of issues, WMATA's leadership "became concerned that the value of the commercial revenues being generated by controversial ads might be outweighed by other considerations that a public agency such as WMATA has and the role we play in the community and the role we play with our riders and our employees." *Id.* at 41, JA 127. After examining the costs and benefits of its erstwhile policy, WMATA's leadership "recommend[ed] to the board we ought to stop and review whether or not controversial ads and the value they generated were worthwhile in serving transportation for the agency." *Id.* at 42, JA 128. It reasonably determined that the complaints of customers and employees, the risks of violence and vandalism, and the administrative burden overcame any benefits from added revenue.

Conspicuously, AFDI has not engaged with *any* of the considerations weighed by WMATA. Instead, Appellants have focused myopically on revenue-promotion, as if that could be the only goal of a government body providing transportation to the public. AFDI Brief 44-45. But as the Supreme Court explained in *Lehman*, where a "city consciously has limited access to its transit

system advertising space in order to minimize chances of abuse, the appearance of favoritism, and the risk of imposing upon a captive audience," such justifications "are reasonable legislative objectives."  418 U.S. at 304; *see also Lebron*, 69 F.3d at 658 ("Amtrak's position as a government controlled and financed public facility, used daily by thousands of people, made it highly advisable to avoid the criticism and the embarrassments of allowing any display seeming to favor any political view.").  In keeping with these precedents in the identical transit authority context, WMATA's decision to bar issue-oriented advertising was reasonable.

AFDI relies on two cases from other Circuits to contend that WMATA's policy is unreasonable, but both are readily distinguishable.  In *NAACP v. City of Philadelphia*, 834 F.3d 435 (3d Cir. 2016), the Third Circuit found a ban on noncommercial advertisements in an airport to be unreasonable.  But it did so because it found that the rationales provided by the city, "revenue maximization and controversy avoidance," were not served by the ban.  *Id.* at 445.  Revenue maximization was not served because the restriction was costing the city money, while controversy avoidance was not served because the city provided no "record evidence," including in employee depositions, that this was a purpose of the airport's policy.  *See id.* at 445-46.

In this case, by contrast, the record overwhelmingly supports the reasonableness of WMATA's justifications.  Bowersox provided detailed and

undisputed testimony explaining why WMATA closed its forum. She further explained that WMATA's concerns about issue-oriented advertising arose *before* AFDI's advertisement was submitted. In the face of that record evidence, AFDI submitted and cited absolutely nothing.

AFDI's reliance on *Christ's Bride Ministries, Inc. v. Southeast Pennsylvania Transportation Authority*, 148 F.3d 242 (3d Cir. 1998), is no more persuasive. In that case, the transit authority removed anti-abortion advertisements that it believed to be misleading. But that case involved two features not present here. First, the transit authority's policy and its implementation of that policy made clear that it operated a designated public forum, and so the advertisements at issue in that case were subject to heightened scrutiny. Unlike this case, the transit authority presented no evidence that it had "rejected the ad pursuant to a new or previously existing policy to close the forum to debatable or misleading speech generally, or close it to speech on any particular topic of health." *Id.* at 253. Second, the transit authority had historically accepted advertisements that advocated in favor of legalized abortion, thereby rendering the decision at issue a clear form of viewpoint discrimination. *See id.* at 251-52.

Ultimately, *Christ's Bride Ministries* stands only for the uncontroversial proposition that where a transit authority operates a public forum and enforces its policy to restrict speech on the basis of viewpoint, it violates the First Amendment.

*Christ's Bride Ministries* is inapposite here because WMATA operates a *nonpublic* forum and has a policy that is viewpoint-*neutral*.

> (c)    *WMATA's policy is not unconstitutionally vague*

Although AFDI does not advance vagueness as an independent argument, it appears at times to contend that WMATA's policy is unconstitutionally vague. *See* AFDI Brief 26-27, 37-39. The district court properly rejected this argument.

A policy is unconstitutionally vague only where it provides officials with "unbridled discretion over a forum's use." *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975). WMATA's May 28, 2015 policy does no such thing. That policy did not, for example, simply ban "issue-oriented advertisements," and leave all elaboration up to WMATA officials. Instead, it further elaborated that this category "includ[ed] but [was] not limited to, political, religious, and advocacy advertising." Mot. by Chair of Bd. of Dirs., JA 34. And to the extent that WMATA's permanent Guidelines adopted in November, 2015 are properly before this Court, they only add further definition to WMATA's ban, making clear that issue-oriented advertising includes: "Advertisements intended to influence members of the public regarding an issue on which there are varying opinions"; "Advertisements that promote or oppose any religion, religious practice or belief"; and "Advertisements that are intended to influence public policy." Guidelines, JA 37-38.

The Sixth Circuit rejected a vagueness challenge from AFDI in a nearly

identical case.  The Sixth Circuit found that a restriction on "political or political

campaign advertising" was "not so vague or ambiguous that a person [could not]

readily identify the applicable standard." *AFDI v. SMART*, 698 F.3d at 893

(internal quotation marks omitted).  As is true of any guideline, "[o]n the margins,

there may be some difficult determinations." *Id.*  But the Sixth Circuit noted that

any policy would require officials to exercise a "certain amount of discretion," and

the Supreme Court required only removing "unbridled discretion." *Id.*

WMATA's policies do just that.  The May 28, 2015 policy barred "political"

advertisements.  AFDI's advertisement fall well within this category.  In its

complaint, AFDI explains its advertisement attempts to "make the point that the

First Amendment will not yield to Sharia-adherent Islam who want to enforce so-

called blasphemy laws here in the United States, whether through threats of

violence or through the actions of complicit government officials."  Compl. ¶ 25,

JA 15.  While there sometimes may be difficult judgment calls about what

advertisements qualify as political, and those difficult cases will require

government officials to exercise limited discretion, there is no doubt that, like

AFDI's advertisement in *AFDI v. SMART*, this advertisement is "decidedly

political." *AFDI v. SMART*, 698 F.3d at 894.[8]  WMATA's policy, like numerous

other transit policies that bar political advertisements, is therefore not

unconstitutionally vague on its face or as applied to AFDI's Prophet Muhammad

advertisement.  *See Lehman*, 418 U.S. at 304; *AFDI v. SMART*, 698 F.3d at 893-

95; *AFDI v. MTA*, 815 F.3d at 109-11; *Lebron*, 69 F.3d at 658.

### B.    WMATA's decision to change its advertising pace to a nonpublic forum was permissible and does not alter the First Amendment analysis

Unable to show that WMATA improperly rejected its advertisement under

the May 28, 2015 policy, AFDI contends that WMATA's decision to close its

forum was a pretext for discriminating against AFDI's speech on the basis of its

viewpoint.  *See* AFDI Brief 28-31.  But the undisputed facts refute this contention.

In all events, as the Supreme Court has repeatedly noted and AFDI concedes, *see*

*id.* at 28, the government "is not required to indefinitely retain the open character

---

[8] AFDI contends that the only issue presented in its advertisement was "free speech."  *See* AFDI Brief 26-27.  It relies on a statement from Bowersox in her deposition that she "believe[d]" that the advertisement would "come under advocacy because it advocates free speech and does not try to sell you a commercial product."  Bowersox Dep. 108, JA 138.  But Bowersox was careful to note that she "did not make the determination" as to why an advertisement ran afoul of the Guidelines, and any statement she made was "not a legal interpretation."  *See id.*  Instead, a panel of WMATA attorneys "determine what is issue oriented, political, [and] religious."  *Id.*  WMATA's attorneys, including in this litigation, have consistently argued that AFDI's advertisement was political in nature.  *See* R. 25, Defendants' Opposition to Plaintiffs' Cross-Motion for Summary Judgment 13-14.  It was properly rejected on that ground.

of" its forum.  *Cornelius*, 473 U.S. at 802; *see also Perry*, 460 U.S. at 46 ("[A]

state is not required to indefinitely retain the open character of [a forum].").

AFDI's argument consequently fails both as a matter of fact and of law.

> 1. *WMATA did not change its forum from designated public to nonpublic because of AFDI's advertisement*

AFDI's argument that WMATA's decision to close its public forum was a

pretext for viewpoint discrimination against the advertisement at issue in this case

lacks any record support.  Moreover, to find, as AFDI urges, that the evidence in

the record does support a finding of pretext would conflict with this Court's

precedents and those of other Circuits in strikingly similar cases.

AFDI's "pretext" argument rests entirely on two facts: 1) it submitted an

advertisement on May 20, 2015 and WMATA changed its policy on May 28; and

2) WMATA stated that AFDI's advertisement was the "straw that broke the

camel's back," that is, that AFDI's advertisement provided WMATA with the final

impetus to change its policy.  But the factual allegations do not come close to

establishing that WMATA closed its forum as a pretext to discriminate against

AFDI's message.

As previously noted, the undisputed evidence establishes that in the years

leading up to 2015, WMATA had grown concerned about numerous problems

caused by issue-oriented advertisements, including community and employee

"consternation" regarding issue-oriented advertisements, security and violence

concerns, vandalism of WMATA property in response advertising messages, and administrative burden. *See* pp. 7-10, *supra*. Strikingly, AFDI has not presented any evidence to dispute WMATA's account.

AFDI's pretext argument instead rests entirely on the timing of WMATA's policy change. Because its advertisement was under review at the time that WMATA altered its policy, AFDI insists, the change must be viewed as a pretext for discriminating against AFDI's message. But as the district court found, the timing of the policy change, and Bowersox's statement that AFDI's advertisement was "'the straw that broke the camel's back' …. does not support an inference that WMATA's guidelines were revised for the purpose of rejecting Plaintiffs' ads." Mem. Op. 12, JA 155.

Indeed, this argument conflicts with numerous cases in which a government body has closed its forum *during pending First Amendment litigation*, and no court has suggested that the timing of these changes casts any doubt on an authority's right to make such a change. For example, in *Initiative & Referendum Institute*, various nonprofit groups and individuals challenged a United States Post Office regulation that barred the collection of signatures for petitions on postal service property. *See* 685 F.3d at 1067. After this Court found that the regulation could impermissibly restrict expressive activity on public forums, the postal service modified its regulation to make clear which areas on its property were nonpublic

forums and exactly which disputed activities were banned on that property.  *See id.* at 1069-70.  On subsequent appeal, the timing of this change—during the pending litigation—did not lead this Court to find that the change in policy was a pretext to silence the speech at issue.  *See id.* at 1070.

Other circuits have similarly upheld speech restrictions in the transit authority context imposed by policies that converted designated public forums into nonpublic forums during pending litigation, without finding that those changes were a pretext to reject the speech subject to litigation.  In *AFDI v. MTA*, the district court found that the MTA's rejection of AFDI's advertisement violated the First Amendment, and issued a preliminary injunction against enforcement of the policy, though it temporarily stayed the effectiveness of the injunction.  *See* 815 F.3d at 108.  While the stay was in effect, the MTA converted its public forum to a nonpublic forum and rejected AFDI's advertisement under the new policy.  *See id.* The Second Circuit found that the change in policy mooted AFDI's case, a result that was permissible only if the policy change raised no First Amendment issue. Similarly, in *Ridley*, the transit authority altered its policy *twice* in the midst of a protracted dispute over multiple advertisements with one of the plaintiffs, but the First Circuit nonetheless found "no evidence that the 2003 changes [to the transit authority policy] were adopted as a mere pretext to reject plaintiff's advertisements."  390 F.3d at 74-75, 77.  Under AFDI's misguided position that

43

the timing of a change, on its own, is enough to infer pretext, this decision would also be wrong.

In short, these cases found no constitutional infirmity where government bodies altered their policy when litigation was *already* pending.  In such cases, the inference that the policy was changed because of the advertisement subject to litigation is strongest.  Still, the courts found no case for pretext based on the timing of the changes to the advertising policies.  In this case, WMATA closed its forum while no litigation was pending at all.  Just as the courts in those cases found that the timing of the policy changes did not show a pretext for viewpoint discrimination, so too this Court should find that timing *alone* is not enough to infer pretext.

AFDI's pretext arguments are not only defeated by precedent.  They are also defeated by common sense.  If courts adopted AFDI's view that closing a forum after an advertisement was submitted was impermissible discrimination, governments would never be able close a forum while advertisements were under review without creating an inference that it had done so for unlawful reasons.  A plaintiff like AFDI could keep a forum open indefinitely by maintaining a constant stream of advertisements for the governmental body to review.  This bizarre result would contradict the Supreme Court's statements in *Cornelius* and *Perry* that a government can close a designated public forum at its discretion.

2.    *AFDI cannot show that WMATA changed its policy as a pretext for discriminating against AFDI on the basis of viewpoint*

The undisputed evidence makes clear that WMATA did not change its policy solely because of AFDI's advertisement.  But even if AFDI could establish, in spite of the district court's finding to the contrary, that its advertisement was the sole cause of WMATA's policy change, that would not prove that WMATA changed its policy as a pretext to reject AFDI's advertisement on the basis of its viewpoint.

A government entity is entitled to close a designated public forum, as WMATA did here.  *See Cornelius*, 473 U.S. at 802.  AFDI argues that this general rule does not hold where a government closes its forum as a "pretext to reject" a party's advertisements.  *See* AFDI Brief 29 (quoting *Ridley*, 390 F.3d at 77).  Although neither the Supreme Court nor this Circuit has adopted such a rule, AFDI cannot show such a pretext here, even assuming it applies.  That is because, as interpreted by AFDI's own cases, the term "pretext" requires not just that a particular advertisement was the proximate cause of a change in policy, but that there is *evidence* that the advertisement is being singled out based on its viewpoint.  *See Ridley*, 390 F. 3d at 87-88 (noting that only where additional information in the record, in the form of "direct evidence," casts doubt on the government's "seemingly neutral justifications" will the court find pretext); *Coleman v. Ann Arbor Transp. Auth.*, 947 F. Supp. 2d 777, 788 (E.D. Mich. 2013) (noting that

45

"there has been no evidence submitted that the … rejection was motivated by actual viewpoint discrimination").

Under the cases AFDI cites, a party can rely on two types of evidence to show pretext based on viewpoint. It can introduce *retrospective* evidence demonstrating that a government's decision to reject the advertisement at issue was, in fact, based on a disfavored viewpoint. Alternatively, it can rely on *prospective* evidence showing that the policy was not applied evenhandedly after the advertisement was rejected. Both types of evidence can be used to smoke out whether a government's decision to change its policy or reject a particular advertisement, like AFDI's Prophet Muhammad advertisement, was based on constitutionally impermissible reasons. Here, AFDI has presented *neither* type of evidence.

*Ridley*, the case on which AFDI most heavily relies, identifies the kind of retrospective and prospective evidence that "will lead a court to conclude that, despite the seemingly neutral justifications offered by the government, nonetheless the decision to exclude speech is a form of impermissible discrimination." 390 F.3d at 87. "First, statements by government officials on the reasons for an action can indicate an improper motive." *Id.* In *Ridley*, the court noted that the transit authority had accompanied its rejection of advertisements with statements making clear that it disapproved of advertisements' message to "reform marijuana laws"

46

and "legalize" marijuana. *Id.* at 88. This "direct evidence" was required to overcome the viewpoint neutral policy. In this case, there are no statements by WMATA officials suggesting that the decision to close the forum was meant to silence AFDI. Instead, Bowersox explained that WMATA's decision was made in response to a series of advertisements over a period of years. Unlike in *Ridley*, no statements by government officials provide retrospective evidence of pretext.

"Second, where the government states that it rejects something because of a certain characteristic, but other things possessing the same characteristic are accepted, this sort of underinclusiveness raises a suspicion that the stated neutral ground for action is meant to shield an impermissible motive." *Id.* at 87. As previously noted, AFDI has presented no evidence in this case that WMATA's policy has been applied in an inconsistent manner, such that it has accepted some issue-oriented advertisements while rejecting AFDI's.

"Third, suspicion arises where the viewpoint-neutral ground is not actually served very well by the specific governmental action at issue; where, in other words, the fit between means and ends is loose or nonexistent." *Id.* Again, AFDI can find no record support here. WMATA's goal in closing its forum was to ensure that advertisements do not interfere with its operations through creating community opposition, harming employee morale, raising security threats, increasing vandalism to controversial advertisements, and raising administrative

47

costs.  The means by which it did so—banning issue-oriented advertisements—is

tailored and clear, as WMATA explained that it was issue-oriented advertisements

that were causing these problems.  Because there is a tight match between

WMATA's goals in closing its forum and viewpoint-neutral action it took to do so,

there is once again no evidence of pretext.  Even under AFDI's own purported test,

it cannot make a factual showing that WMATA changed its policy as a pretext to

reject its advertisement.

This result should come as no surprise, as AFDI's entire basis for alleging

pretext is an inference from timing—not record evidence.  In the absence of such

evidence, AFDI's position would undermine a core premise of the forum doctrine:

that "the government is not required to indefinitely retain the open character of" its

forum.  *Cornelius*, 473 U.S. at 802.

### C.    AFDI lacks a justiciable claim for injunctive or declaratory relief arising out of WMATA's pre-May 28, 2015 policy

AFDI argues that the district court erred in holding that the May 28, 2015

moratorium mooted its "claims arising out of WMATA's pre-May 28, 2015

rejection of Plaintiffs' ads."  *See* AFDI Brief 46.  But this argument rests on a

factual misunderstanding.  As the district court correctly found, "WMATA rejected

Plaintiffs' ads *after* the May 28 Moratorium was enacted."  Mem. Op. 5, JA 148

(emphasis added).  Thus, AFDI's claims cannot arise out of any pre-May 28, 2015

rejection because their advertisement was rejected after that date.  It is therefore

48

unsurprising that the district court dispensed with this argument in a single footnote. *Id.* at 10 n.1, JA 153.

Nevertheless, should this Court find that Appellants at one point raised a viable claim under WMATA's pre-May 28, 2015 policy, that claim is now moot. Courts have routinely recognized that where the government alters the rules for its forum during litigation, challenges to the previous policy are moot. *See AFDI v. MTA*, 815 F.3d at 111; *Initiative & Referendum Inst.*, 685 F.3d at 1074. Where the government formally amends the rules for its forum before litigation commences—and before an advertisement can be evaluated under the old rules—the case for mootness is even stronger.

Appellants contend, however, that WMATA's voluntary cessation of its pre-May 28, 2015 advertising policy does not moot this case. But this Court has been clear that "[a]lthough generally voluntary cessation of challenged activity does not moot a case, a court may conclude that voluntary cessation has rendered a case moot if the party urging mootness demonstrates that (1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely or irrevocably eradicated the effects of the alleged violation." *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) (internal quotation marks omitted). WMATA can satisfy both of these factors.

49

*First*, there is "no evidence in this case to suggest" that WMATA intends to revert to the pre-May 28, 2015 policy or "has anything like that in mind." *Initiative & Referendum Inst.*, 685 F.3d at 1074.  In fact, all of the evidence points in the opposite direction.  WMATA has applied the new policy for more than two years without a hint that it intends to restore the old policy following this litigation.  And for good reason:  After a careful five-and-a-half month review that thoughtfully took into account public opinion, WMATA made its temporary moratorium on "issue-oriented" advertisements permanent in November, 2015, and it promulgated a set of Guidelines to enforce the new policy.  "It is implausible that [WMATA] would have gone through the cumbersome process of amending its [policy] … only to re-amend the regulation after the case is resolved to once again cover them."  *Initiative & Referendum Inst.*, 685 F.3d at 1074.  To be sure, nothing prevents WMATA from reenacting its previous policy.  But "[t]he mere power to reenact a challenged law is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists."  *Nat'l Black Police Ass'n*, 108 F.3d at 349.  Accordingly, this case illustrates why this Court routinely applies "the perfectly uncontroversial and well-settled principle of law, namely, when an agency has rescinded and replaced a challenged regulation, litigation over the legality of the original regulation becomes moot."  *Akiachak Native Cmty. v. U. S. Dep't of Interior*, 827 F.3d 100, 113–14 (D.C. Cir. 2016) (citing cases).

50

*Second*, WMATA's previous policy has no continuing effects. Appellants suffer no harm from the pre-May 28, 2015 policy. Their advertisement was never evaluated under that policy, and they have presented no evidence that AFDI experiences any "lingering effect" of that previous policy. *AFDI v. MTA*, 815 F. 3d at 110. WMATA "does not, for example, limit the number of advertisements that an entity can submit or factor in past denials when considering whether to display later-submitted advertisements." *Id*. Consequently, "any restriction on AFDI's speech at this time is a consequence of [WMATA's] new advertising policy, not a relic of its old one." *Id*.

In sum, because the pre-May 28, 2015 policy "no longer applies to" AFDI, "'declaratory and injunctive relief'" with respect to that policy "'would no longer be appropriate'" should this court conclude that Appellants have actually challenged it. *Initiative & Referendum Inst.*, 685 F.3d at 1074 (quoting *Nat'l Black Police Ass'n*, 108 F.3d at 350).

## III. WMATA Is Not Liable Under 42 U.S.C. § 1983, And Its Officers Are Not Liable For Damages Under That Statute

For the reasons stated above, the district court's decision should be affirmed because AFDI lacks valid First and Fourteenth Amendment claims. Should this Court disagree, however, AFDI's claims against WMATA also fail as a matter of law because it cannot be liable under 42 U.S.C. § 1983. Likewise, WMATA's general manager is not liable for damages under Section 1983.

51

As AFDI recognizes, *see* AFDI Brief 51, the Supreme Court "made clear" in *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), "that States and their agencies and officials cannot be sued under Section 1983 because they are not 'persons' within the meaning of that statute." *Tapp v. WMATA*, No. 15-CV-0768 (KBJ), 2016 WL 7441719, at *7 (D.D.C. Sept. 30, 2016).  It nevertheless contends that WMATA has "substantial corporate and municipal characteristics that make it more like a local governmental unit or political subdivision than an arm of state government." *See* AFDI Brief 52.  But, regardless of these asserted characteristics, "as an interstate compact agency created by Maryland, Virginia, and the District of Columbia, WMATA is an arm of its signatory states for Section 1983 purposes and, as a result, cannot be sued under that statute." *Tapp*, 2016 WL 7441719, at *7.[9]

---

[9] *See, e.g., Lizzi v. Alexander,* 255 F.3d 128, 132 (4th Cir. 2001) ("We note at the outset that WMATA possesses Eleventh Amendment immunity.  The signatories of the compact intended to confer Eleventh Amendment immunity on WMATA.  Further, both this circuit and the D.C. Circuit have held that Eleventh Amendment immunity may attach to WMATA's actions. WMATA is a state agency, subject to all the benefits and liabilities of a state itself, including sovereign immunity. It does not matter that WMATA was created by interstate compact, as opposed to being an agency of one state alone." (internal citations omitted)) (*overruled on another ground by Nevada Dep't. of Human Res. v. Hibbs*, 538 U.S. 721, *as recognized by Martin v. Wood*, 772 F.3d 192, 194 (4th Cir. 2014)); *Morris v. WMATA*, 781 F. 2d 218, 219 (D.C. Cir. 1986) ("WMATA's sovereign immunity exists because the signatories have successfully conferred their respective sovereign immunities upon it."); *see also Lucero-Nelson v. WMATA*, 1 F. Supp. 2d 1, 7 (D.D.C.1998); *James v. WMATA*, 649 F. Supp. 2d 424,

AFDI cites no case to the contrary. It also cites no case (or fact from the record) for their assertion that WMATA may be sued under Section 1983 because the "proposed ads are intended for display in Washington, D.C. and not in any of the signatory states." AFDI Brief 53. And it cites no case for their novel arguments that the "nominal" size of the damages sought or the fact that attorneys' fees may be awarded from state treasuries has any bearing on WMATA's immunity from suit under Section 1983. *Id.*; *see Morris v. WMATA*, 781 F. 2d 218, 227 (D.C. Cir. 1986) (finding that WMATA was entitled to Eleventh Amendment immunity in part because any judgment would be paid out of State treasuries). Put simply, none of AFDI's arguments can change the fact that this Court has "consistently recognized that in signing the WMATA Compact, Virginia and Maryland each conferred its immunity upon WMATA, which therefore enjoys, to the same extent as each state, immunity from suit in federal court." *Jones v. WMATA*, 205 F.3d 428, 432 (D.C. Cir. 2000). "In light of the Supreme Court's decision in *Will*, WMATA's sovereign immunity means that [WMATA] cannot be sued under § 1983." *Headen*, 741 F. Supp. 2d at 294.

---

429 (D. Md. 2009); *Plater v. Dist. of Columbia Dep't of Transp.*, 530 F. Supp. 2d 101, 104 (D.D.C. 2008); *Disability Rights Council of Greater Wash. v. WMATA*, 239 F.R.D. 9, 20 (D.D.C. 2006); *Headen v. WMATA*, 741 F. Supp. 2d 289, 294 (D.D.C. 2010); *Cutchin v. District of Columbia*, 174 F. Supp. 3d 427, 429-30 (D.D.C. 2016).

AFDI also argues that WMATA does not enjoy sovereign immunity for its leasing of advertising space because that is a "proprietary (as opposed to governmental) function." *See* AFDI Brief 50. But AFDI is challenging WMATA's decision to convert its advertising space from a designated public forum to a non-public forum in which issue advertisements are prohibited. That is an archetypal discretionary function, as it involved "'political, social, and economic judgments' of the agency," *Souders v. WMATA*, 48 F.3d 546, 549 (D.C. Cir. 1995) (quoting *Dant v. District of Columbia*, 829 F.2d 69, 74 (D.C. Cir. 1987)), and was "'based on considerations of public policy" and required "an element of judgment or choice.'" *Abdulwali v. WMATA*, 315 F.3d 302, 304 (D.C. Cir. 2003) (quoting *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988)). As a governmental, and not propriety function, WMATA's decision to change its forum and reject AFDI's Prophet Muhammad advertisement under its new policy is plainly immune from suit.

Finally, WMATA's General Manager is not liable for damages under Section 1983 for much the same reasons. Because he was sued in his official capacity, he, too, is immune from a damages action under Section 1983. *Will*, 491 U.S. at 71. What is more, he is otherwise immune under section 80 of the WMATA Compact, which provides that "the exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall

54

be by suit against the Authority." D.C. Code § 9-1107.01 (80). WMATA

conceded below that AFDI may seek prospective injunctive relief against

WMATA's General Manager under *Ex Parte Young*, 209 U.S. 123 (1908). *See*

R.25, Defendants' Opposition to Plaintiffs' Cross-Motion for Summary Judgment

17. But to the extent this Court finds any merit in Appellants' constitutional

claims—and there is none—their suit against WMATA's General Manager may

not seek damages.

## CONCLUSION

For the reasons discussed, WMATA respectfully requests that the Court affirm the district's court grant of summary judgment to WMATA.

Respectfully submitted,

/s/ Donald B. Verrilli Jr.

| | |
|---|---|
| Patricia Y. Lee | Donald B. Verrilli Jr. |
| Gerard J. Stief | Chad I. Golder |
| WMATA | Jonathan S. Meltzer |
| 600 Fifth Street, N.W. | MUNGER, TOLLES & OLSON LLP |
| Washington, D.C. 20001 | 1155 F Street N.W., Seventh Floor |
| Telephone:   202-962-1463 | Washington, D.C. 20004-1357 |
| Facsimile:    202-962-2550 | Telephone:    (202) 220-1100 |
| | Facsimile:    (202) 220-2300 |
| | Donald.Verrilli@mto.com |
| | Chad.Golder@mto.com |
| | Jonathan.Meltzer@mto.com |
| | |
| | Rex S. Heinke |
| | AKIN GUMP STRAUSS HAUER |
| | & FELD LLP |
| | 1999 Avenue of the Stars, Suite 600 |
| | Los Angeles, California 90067 |
| | Telephone:    (310) 229-1000 |
| | Facsimile:    (310) 229-1001 |
| | rheinke@akingump.com |

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g) of the Federal Rules of Appellant Procedure, the undersigned counsel hereby certifies that this brief complies with the type volume limitation of Rule 32(a)(7)(B). As measured by the word-processing system used to prepare this brief, there are 12,344 words in the brief excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Cir. Rule 32(e)(1).

/s/ Donald B. Verrilli Jr.
Donald B. Verrilli Jr.

## CERTIFICATE OF SERVICE

I certify that on August 23, 2017, a true and correct copy of this Brief of Appellant was filed via the Court's electronic filing system, which will forward a copy to Appellee's counsel and all other counsel of record.  I certify that all participants in this case are registered CM/ECF users.  I further certify that eight copies of this filing were delivered this day to the Clerk of the Court.


/s/ Donald B. Verrilli Jr.
Donald B. Verrilli Jr.